Joan B. Tucker Fife (SBN: 144572)
JFife@winston.com
WINSTON & STRAWN LLP
101 California Street, 21st Floor
San Francisco, CA 94111-5891
Telephone:  +1 415-591-1000
Facsimile:   +1 415-591-1400

Caitlin McCann (SBN: 305626)
CMcCann@winston.com
WINSTON & STRAWN LLP
333 S Grand Avenue
Los Angeles, CA 90071-1543
Telephone:  +1 415-591-1000
Facsimile:   +1 415-591-1400

*Attorneys for Defendant LAND O'LAKES, INC*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY LENZ and GEORGE EDMONDS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LAND O'LAKES, INC.; and DOES 1 through 10, inclusive,<br><br>Defendant. | **Case No.**<br><br>[Tulare County Superior Court Case No.: VCU325133]<br><br>**DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>Complaint filed: August 26, 2025 |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD AND TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. Sections 1331, 1332, 1441, and 1446, Defendant Land O'Lakes, Inc. ("Defendant") hereby removes the above-captioned matter from the Superior Court of the State of California in and for the County of Tulare, to this Court, and states:

## JURISDICTIONAL STATEMENT

### I.    INTRODUCTION

1.    This case is hereby removed from state court to federal court because this court has original jurisdiction over this action pursuant to 28 U.S.C. Sections 1441(c) and 1446. This notice is based upon the original jurisdiction of the United States District Court over the parties under 28 U.S.C. Section 1331, based upon the existence of a federal question as stated below.

2.    Further, this case is hereby removed from state court to federal court pursuant to 28 U.S.C. Section 1332 because (1) diversity of citizenship exists between the parties, (2) although Plaintiffs Cody Lenz and George Edmonds' ("Plaintiffs") Complaint does not specify the amount of damages sought, the relief Plaintiffs seek demonstrates the amount in controversy in this case exceeds $5,000,000. Therefore, this Court has original jurisdiction under 28 U.S.C. § 1332(d).

### II.    VENUE

3.    The action was filed in Superior Court for the State of California, County of Tulare. Venue therefore properly lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. Sections 84(b), 1391, and 1441(a).

### III.    THE STATE COURT ACTION IN THIS CASE

4.    On August 26, 2025, Plaintiffs commenced a class action in the Superior Court of the State of California for the County of Tulare entitled *Cody Lenz and*

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

*George Edmonds v. Land O'Lakes, Inc.,* Case No. VCU325133. The Summons and Complaint, Civil Case Coversheet, and ADR Packet were served on Defendant on or about August 27, 2025.

5.    The Complaint alleges class action claims for: (1) failure to pay minimum wages; (2) failure to pay overtime compensation; (3) failure to provide meal periods; (4) failure to authorize and permit rest breaks; (5) failure to indemnify necessary business expenses; (6) failure to timely pay final wages at termination; (7) failure to provide accurate itemized wage statements; and (8) unfair business practices (Complaint ¶¶ 30-94.) The Complaint does not expressly enumerate any claim under federal law and omits that the terms and conditions of Plaintiffs' employment were subject to a Collective Bargaining Agreement ("CBA").

6.    On September 15, 2025, Defendant served Plaintiffs with Acknowledgment of Receipt of a copy of the Summons and of the Complaint, Civil Case Coversheet, and ADR Packet. On October 13, 2025, Defendant timely filed an Answer to Plaintiffs' Complaint in state court.

## IV.    JOINDER

7.    Defendant is not aware of any other defendant having been served with a copy of the Complaint.

## V.    FEDERAL QUESTION JURISDICTION BASED ON LABOR MANAGEMENT RELATIONS ACT SECTION 301 PREEMPTION

### A.    Claims arising out of a collective bargaining agreement are preempted by Section 301 of the Labor Management Relations Act.

8.    The relief sought in the Complaint arises under, and is preempted by, Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) ("LMRA"). Thus, this is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1331 and is one which may be removed to this court by Defendant pursuant to the provisions of 28 U.S.C. Section 1441.

9.      Section 301 of the LMRA provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "Although § 301 contains no express language of preemption, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019) (*citing Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)). As a result, "a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court." *Id.* at 1152. The preemptive force of Section 301 goes "'beyond suits alleging contract violations' to state law claims grounded in the provisions of a CBA or requiring interpretation of a CBA." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (*citing Lueck*, 471 U.S. at 210-11).

**B.    Plaintiffs' employment was governed by collective bargaining agreements.**

10.      Land O'Lakes, Inc. hired Plaintiff Cody Lenz on July 16, 2014 as a non-exempt employee at the Tulare, California location. (Declaration of Brandon Lundgren ["Lundgren Dec."] ¶ 2.) Defendant currently employs Lenz. (*Id.*) Throughout his employment, Lenz was and is a collective bargaining member of the Teamsters Local 517, Creamery Employees and Drivers, Public, Professional and Medical Employees Union (the "Union" or "Teamsters"). (*Id.* ¶ 3.) As relevant here, Lenz was and is subject to two collective bargaining agreements ("CBAs") between Land O'Lakes, Inc. and the Union in effect from August 1, 2020 through July 31, 2025 and June 1, 2024 through May 31, 2029. (*Id.*, Exs. 1, 2.)

11.      Land O'Lakes, Inc. employed Plaintiff George Edmonds from approximately April 11, 2017 to May 6, 2022 as a non-exempt employee at the Tulare, California location. (*Id.* ¶ 4.) Edmonds was a collective bargaining member of the

Teamsters, and, as relevant here, subject to the CBA in effect from August 1, 2020 through July 31, 2025. (*Id.* ¶ 5.)

12.     At all times relevant to this case, Plaintiffs' employment was subject to a CBA between Land O'Lakes, Inc. and the Teamsters, which includes terms and conditions governing wages (including overtime and double time), work schedules, hours of work, meal periods, rest periods, working conditions, grievances, and arbitrations. (*Id.* ¶¶ 3, 5, Exs. 1, 2.)

13.     The Union is a labor organization within the meaning of Section 2(5) of the NLRA and 301(a) of the LRMA, 29 U.S.C. Sections 152(5) and 185(a).

14.     Land O'Lakes, Inc. is an employer within the meaning of the LMRA, 29 U.S.C. Section 152(2).

15.     Section I of the CBA specifically states that the Union is the sole agent for the purpose of collective bargaining for all bargaining unit employees working at Land O'Lakes, Inc.'s Tulare facility, who are covered by the provisions of the agreement, and which establishes rates of pay, hours of work, and other conditions of employment, as set forth above. (Lundgren Dec. ¶ 3, Exs. 1, 2.)

## C.    Plaintiffs' overtime claims are preempted by Section 301 of the LMRA.

16.     Section 301 of the LMRA grants federal courts exclusive jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization . . . without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007). Courts apply a two-part test to determine whether Section 301 preempts a given claim. First, courts ask if the claim seeks "purely to vindicate a right or duty created by the CBA itself". *Curtis*, 913 F.3d at 1152. If the right exists solely under the CBA, the claim is preempted. *Id.* at 1153. If not, courts must proceed to step two to assess "whether a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

looking to versus interpreting the CBA." *Id.* (internal citation and quotations omitted). Plaintiffs' overtime claims are preempted by Section 301 of the LMRA and removable to this Court.

### 1.   Plaintiffs' failure to reference Section 301 of the LMRA in the Complaint does not preclude removal.

17.   The Complaint omits the fact that Plaintiffs were members of the Union and employed by Land O'Lakes, Inc. through a CBA. But the "[m]ere omission of reference to Section 301 in the complaint does not preclude federal subject matter jurisdiction." *Fristoe v. Reynolds Afetals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1990). A plaintiff may not avoid removal by "artfully pleading" his complaint to conceal the true nature of the complaint. *See Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted because it implicated provisions of the CBA, even though the complaint made no mention of a CBA). The Court may look beyond the face of the Complaint, and at the facts stated in the Notice of Removal, to determine whether the claims asserted are in fact preempted by Section 301. *See Lippitt* v. *Raymond James Financial Servs., Inc.,* 340 F.3d 1033, 1041 (9th Cir. 2003); *Schroeder* v. *Trans World Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir. 1983), *overruled in part on other grounds in Moore-Thomas* v. *Alaska Airlines, Inc.,* 553 F.3d 1241 (9th Cir. 2009). Thus, the fact that Plaintiffs have not made specific reference to the CBAs or Section 301 in the Complaint does not preclude removal. *See Milne Employees Ass'n v. Sun Carriers, Inc.,* 960 F.2d 1401, 1406 (9th Cir. 1991).

18.   An artfully pled state law claim should be "recharacterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc.* v. *Williams,* 482 U.S. 386, 393 (1987); *Franchise Tax*

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

*Bd.* v. *Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[I]f a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises' under federal law."). Section 301 of the LMRA is a federal statute that can have complete preemptive force. *Avco v. Aero Lodge No. 735*, 390 U.S. 557, 558-62 (1968); *see also Buck v. Cemex, Inc.*, No. 1:13-cv-00701-LJO-MJS, 2013 WL 4648579, at *2 (E.D. Cal. Aug. 29, 2013).

### 2. Plaintiffs' overtime claim is preempted by Section 301 because their right to overtime arises out of the CBAs and resolution of their overtime claims will require interpretation of the CBA.

19.    ***Plaintiffs' right to overtime arises out of the CBAs.*** The California Labor Code provides an exemption for overtime where the CBA provides for certain protections, which are satisfied here. Specifically, Sections 510 and 511, which provide for employees' rights to overtime, do not apply where the collective bargaining agreements meet the requirements of Labor Code Section 514. Section 514 provides: "[s]ections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. "In other words, where the CBA contains rules governing overtime (among other things), those rules effectively displace the relevant provisions of the California Labor Code." *Van Bebber v. Dignity Health*, No. 119CV00264DADEPG, 2019 WL 4127204, at *3 (E.D. Cal. Aug. 30, 2019).

20.    Here, the CBAs meet those criteria: they provide for the minimum scale of wages based on classification, hours of work, and working conditions, and specifically call for and define premium pay for all overtime hours worked. (Lundgren Dec. ¶ 3, Exs. 1, 2.) The CBAs mandate that employees be paid at an hourly rate well

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

above the minimum threshold of 30% more than the state minimum wage at all relevant times – for example, June 1, 2025 minimum straight time hourly wage rates currently in effect under the CBA range from $29.97 to $39.13 (California minimum wage for 2025 is $16.50 per hour). (*Id.*) The Ninth Circuit explicitly holds that if a CBA meets the requirements of Section 514, overtime claims are controlled by the CBA rather than by Section 510 and are preempted. *See Curtis v. Irwin Indus., Inc.,* 913 F.3d 1146 (9th Cir. 2019) (finding plaintiff's California Labor Code Section 510 claim was preempted by Section 301 of the LMRA because plaintiff was covered by a collective bargaining agreement that specified "the wages, hours of work, and working conditions of the employees, and ... premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.") Thus, Plaintiffs' overtime claims are preempted by Section 301 of the LMRA and properly removed to this Court.

21. ***Plaintiff's overtime claim also requires the Court to interpret the CBAs.*** The CBAs set forth the parties' mutual agreement regarding all issues pertaining to employee overtime wages, including but not limited to pay for minimum straight time wages, classifications, night work pay, overtime pay, double time pay, work schedules, hours of work, show-up time, call-back pay, and reporting pay. (Lundgren Dec. ¶ 3, Exs. 1, 2.) Plaintiffs' claims revolve around their allegations that they were not paid for all hours worked, including overtime wages. To determine the validity of Plaintiffs' claims, the Court will need to review and analyze a multitude of provisions governing or impacting overtime wages throughout CBA, including the scope, meaning, and application of those provisions, and interpret these provisions to determine how they interact with one another. Plaintiffs' overtime claims are therefore also preempted because they require interpretation of the CBAs.

**D.    This Court has Supplemental Jurisdiction Over Plaintiffs' Other Claims.**

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

22.    Because the Court has original federal jurisdiction based on Section 301 preemption of Plaintiffs' overtime claims, the remaining claims are within the supplemental jurisdiction of this Court under 29 U.S.C. Section 1367(a). The Court "may exercise supplemental jurisdiction over claims that are brought in conjunction" with the preempted claim. *Brown v. Brotman Medical Center, Inc.*, 571 Fed. Appx. 572, 576 (2014). Plaintiffs' remaining claims relate to the same Defendant and are grounded in Plaintiffs' wages, hours, and working conditions during the same period of time. All the pleaded claims relate to and emanate from the same employment relationship between Plaintiffs and Defendant that is the subject of the federal question claims, and form part of the same "case or controversy," such that they should all be tried in one action. *See Nishimoto* v. *Federman-Backrach & Assoc.,* 903 F.2d 709, 714 (9th Cir. 1990). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims in the Complaint. *See Executive Software* v. *U.S. Dist. Court,* 24 F.3d 1545, 1557 (9th Cir. 1994). Accordingly, by virtue of 28 U.S.C. § 1441, Defendant is entitled to remove all Plaintiffs' claims to this Court.

23.    In the alternative, any such other claims for relief are separate and independent claims which are properly removable to this Court pursuant to 28 U.S.C. Section 1332(d), as discussed in Section VI.

24.    Thus, this action is removable in its entirety.

## VI.    DIVERSITY JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT ("CAFA")

25.    Pursuant to CAFA, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). In addition, CAFA provides for jurisdiction in the district

courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State Officials, or other governmental entities. 28 U.S.C. § 1332(d)(5). Thus, as set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. section 1332(d) because, based on the allegations that Plaintiffs set forth in the Complaint: it is a civil action filed as a class action involving more than 100 members; the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; Plaintiffs and Defendant are citizens of different states; and no Defendant is a state, state official, or government entity.

### A.    Numerosity

26.    CAFA provides that the district courts shall not have jurisdiction over actions "where the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5). Plaintiffs' proposed putative class includes "[a]ll All persons who worked for any Defendant in California as a non-exempt employee at any time during the period beginning June 25, 2021 and ending when notice to the Class is sent." (Complaint ¶ 23.) There are approximately 1,078 putative individuals in California who fall within the scope of Plaintiffs' proposed putative class.[1] (Declaration of Ariel Kumpinsky ["Kumpinsky Dec."] ¶ 3.)

### B.    Diversity of Citizenship

27.    CAFA's diversity requirement is satisfied when any member of a class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). The citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F. 2d 790, 794 (9th Cir. 1986).

---

[1] This number of employees and the aggregate class data cited below are based on data for non-exempt employees in California from June 25, 2021 to March 10, 2025. Thus, based on the allegations Plaintiffs set forth in the Complaint, the numbers would actually be higher because the analysis does not account for approximately seven months of data from March 2025 to present. (Kumpinsky Dec. ¶ 3.)

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

28. *Plaintiffs' Citizenship.* To establish citizenship for diversity purposes, a natural person must be (i) a citizen of the United States, and (ii) a domiciliary of a particular state. *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is [his] permanent home, where [he] resides with the intention to remain or to which [he] intends to return." *Id.* The Complaint alleges that Plaintiffs are California residents that worked for Defendants in the State of California. (Complaint ¶ 7.) Further, based on information from Plaintiffs' personnel files, which includes information they submitted to Defendant throughout the course of their employment, Plaintiffs consistently listed a California address as their current address, which demonstrates their "intention to remain" in California and establishes domicile in California. (Lundgren Dec. ¶ 6.) *See Wilson v. CitiMortgage*, No. 5:13-CV-02294-ODW SP, 2013 WL 6871822, at *2 (C.D. Cal. Dec. 17, 2013) (noting that other objective facts, including plaintiff's place of employment, may further establish a plaintiff's citizenship for purposes of removal).

29. *Defendant's Citizenship.* Land O'Lakes, Inc. was, at the time of filing this action, and still is, a citizen of a state other than California – specifically, the state of Minnesota. A corporation is deemed to be a citizen of the state in which it was incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c). Under the "nerve center" test, a corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities*." Hertz Corp. v. Friend, et al.*, 599 U.S. 77, 80-81, 91-93 (2010). Land O'Lakes, Inc. is incorporated in the State of Minnesota. (Declaration of Teneka Reynolds ["Reynolds Dec."] ¶ 3.) Moreover, under the "nerve center" test, Land O'Lakes, Inc.'s principal place of business is also in Minnesota. Land O'Lakes, Inc.'s headquarters are located in Arden Hills, Minnesota, and many key members of Land O'Lakes, Inc.'s executive and management teams work out of Land O'Lakes, Inc.'s principal executive office in Arden Hills, Minnesota. (*Id.*) In addition to

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

conducting the executive meetings in Minnesota, these officers primarily perform their day-to-day job duties in Minnesota, including controlling, directing, and coordinating the activities of Land O'Lakes, Inc. Land O'Lakes, Inc.'s payroll and benefits are also processed in its principal executive office in Arden Hills, Minnesota. (*Id.*)

30.     *Doe defendants.* The presence of Doe defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants need not join in the removal petition). Thus, the existence of Doe defendants 1 through 10 does not deprive this Court of jurisdiction.

31.     Diversity of citizenship exists under CAFA in accordance with 28 U.S.C. § 1332(d)(2) because Plaintiffs are citizens of California and Defendant is a citizen of Minnesota. *See* 28 U.S.C. § 1332(d)(2) (where the amount in controversy is satisfied, "[t]he district courts shall have original jurisdiction of any civil action . . . in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant.").

## C.     The Amount in Controversy Exceeds $5,000,000

32.     CAFA authorizes the removal of class action cases in which, among other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d). Plaintiffs do not specifically allege an amount of damages and/or recoverable penalties in the Complaint, nor do they allege that the aggregate amount in controversy is less than $5,000,000. Therefore, Defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 549 and 553 (2014) (holding defendants need not submit "evidence" establishing CAFA jurisdiction in their removal papers; rather, defendants only need to

provide "a short and plain statement of the grounds for removal"); *see also Al-Najjar v. Kindred Healthcare Operating, Inc.,* No. CV176166PSGFFMX, 2017 WL 4862067, at *2 (C.D. Cal. Oct. 26, 2017).

33.    In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiffs will prevail on each and every one of their claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002), *citing* Burns v. *Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability") and *Angus* v. *Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated"). Here, Land O'Lakes, Inc. denies the merit of each of Plaintiffs' claims, including the alleged putative class, amounts claimed, and the theories upon which they seek recovery; however, for purposes of determining whether jurisdiction exists pursuant to CAFA, Plaintiffs' Complaint, as drafted, plausibly alleges that the amount in controversy for all class members exceeds $5,000,000, exclusive of interest and costs.

34.    During the proposed class period (*i.e.*, June 25, 2021 to the present), the weighted average hourly rate of pay for all members of the putative class was approximately $26.46. (Kumpinsky Dec. ¶ 3.) In the aggregate, putative class members worked approximately 112,137 total workweeks during the class period. (*Id.*) During the class period, putative class members typically worked full-time schedules of approximately 40 hours per week. (*Id.*) Putative class members were paid biweekly, and there were, and are, 26 pay periods per year during the proposed class period. (*Id.* ¶ 5.)

35.    Among other monetary relief, Plaintiffs seek to recover unpaid minimum wages and overtime wages on the theory that "[t]hroughout the statutory period" and "[a]t all relevant times herein mentioned," Defendant "maintained a systematic,

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

company-wide policy and practice of . . . [f]ailing to pay employees for all hours worked, including all minimum wages, and overtime wages." (Complaint ¶¶ 4, 14, 30-48.) Plaintiffs allege that, "throughout the statutory period," they and class members were required to work off-the-clock, including to walk distances in order to clock into work and wait in line in order to clock into work and when returning from meal breaks. (*Id.* ¶ 15.) Plaintiffs further allege that, "[d]uring certain time periods," they and class members were required to undergo temperature checks prior to clocking into work. (*Id.*) Plaintiffs state they and class members "sometimes" had to wait to swipe their badges at the security gates and that after their shifts ended, they "typically" continued to work after clocking out to finish printing reports and other tasks. (*Id.*) Finally, Plaintiffs allege they and class members "sometimes" received phone calls from supervisors and co-workers while off the clock. (*Id.*) Plaintiffs also allege Plaintiffs and class members received their final paycheck through a pay card that charged a fee to withdraw money. (*Id.*) Plaintiffs allege that "[a]t all times relevant", Plaintiffs and the class worked more than 8 hours in a workday, are "regularly" required to work overtime hours. (*Id.* ¶¶ 43, 44.) Taking Plaintiffs' allegations as true, the amount in controversy for Plaintiffs' minimum wage claim could range from **$1,850,260.50** (1 unpaid hour per week x $16.50 (2025 minimum wage) x 112,137 workweeks) to **$9,251,302.50** (5 unpaid hours per week x $16.50 x 112,137 workweeks). Further, taking Plaintiffs' allegations as true, the amount in controversy for Plaintiffs' overtime claim could range from **$4,450,717.53** (1 unpaid overtime hour per week x $26.46 (1.5) overtime rate x 112,137 workweeks) to **$22,253,587.65** (5 unpaid overtime hours per week x $26.46 (1.5) overtime rate x 112,137 workweeks). The amount in controversy on Plaintiffs' First and Second Causes of Action alone makes up, ***at a minimum***, over $6.3 million – well in excess of the $5 million jurisdictional minimum under CAFA. More likely, the amount in controversy exceeds CAFA by more than $26.5 million.

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

36.    Plaintiffs also seek meal period premiums equal to one additional hour of pay for each day a meal period was not provided. (Complaint ¶¶ 49-52.) The Complaint provides no specific allegation as to the number of first and second meal periods Plaintiffs claim they and other putative class members were not provided per week. Rather, the Complaint broadly alleges that Defendant "maintained a systematic, company-wide policy and practice of . . . [f]ailing to provide employees with timely and duty-free meal periods" and "*regularly failed to provide* Plaintiffs and the Class with both meal periods as required by California law." (Complaint ¶¶ 4, 51 (emphasis added).) Plaintiffs' "regular" meal period claims amount to, ***at a minimum***, one (1) meal period violation per week.[2] Therefore, the amount in controversy on this aspect of Plaintiffs' claim amounts to **$2,967,145.02** (one (1) violation per week x $26.46 per hour x 112,137 workweeks during the applicable statute of limitations period). Adding this range of potential damages to the minimum of nearly $6.3 million in unpaid minimum wages and overtime Plaintiffs seek is further evidence that the amount in controversy exceeds $5 million.

37.    Plaintiffs also seek rest break premium pay equal to one additional hour of pay at the employee's regular rate of compensation for each workday that the rest period was not provided. (Complaint ¶¶ 53-56.) Again, while Plaintiffs' Complaint provides no specific allegation as to the precise number of rest periods Plaintiffs claim that they and the other putative members were not provided per week during the applicable statute of limitations period, Plaintiffs allege that Defendant "maintained a

---

[2] For purposes of removal, "courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation." *Coleman*, 730 F. Supp. 2d at 1149; *see also Muniz v. Pilot Travel Centers, LLC*, No. CIV S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (assuming a 100% violation rate for removal where defendants assumed one missed meal period and one missed rest period per day over the course of four years because "plaintiff alleges a common course of conduct in violation of the law"). Similarly, Plaintiffs do not allege a precise calculation and Land O'Lakes, Inc. could properly calculate the amount in controversy based on a 100% violation rate.

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

systematic, company-wide policy and practice of . . . [f]ailing to authorize and permit employees to take timely and duty-free rest periods" and "Defendants *failed to authorize* Plaintiffs and the Class to take rest breaks, regardless of whether employees worked more than 4 hours in a workday. (Complaint ¶ 55 (emphasis added).) Plaintiffs' rest period claims amount to, *at a minimum*, one (1) rest period violation per week.[3] As the calculation of premiums for rest period violations is the same as the calculation for meal period violations, the amount in controversy on this aspect of Plaintiffs' claim amounts to **$2,967,145.02** (one (1) violation per week x $26.46 per hour x 112,137 workweeks during the applicable statute of limitations period). Adding this low range of alleged rest break damages of nearly $3 million to nearly $3 million in unpaid meal period premiums, and a minimum of $6.3 million in unpaid minimum wages and overtime, is further evidence that the amount in controversy exceeds $5 million.

38.    Statutory penalties may also be counted in determining the amount in controversy. *See Mackall v. Healthsource Glob. Staffing, Inc.,* No. 16-CV-03810-WHO, 2016 WL 4579099, at *6 (N.D. Cal. Sept. 2, 2016) (denying plaintiff's motion to remand and finding defendant's calculation of waiting time penalties based on each putative class member's entitlement to one workday's wages for 30 days to be reasonable). Here, the Complaint alleges that Plaintiffs and the other putative class members are entitled to penalties pursuant to California Labor Code section 203, and seek penalties for waiting time penalties of "additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days maximum." (Complaint ¶ 66.) Although the Complaint does not specify the dollar amount of penalties being sought, aggregating the low range of alleged minimum wages, overtime, meal and rest break damages, and waiting time penalties, *the amount in controversy well exceeds the minimum of $5 million.*

---

[3] *See* case authority at FN 1.

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

39.    Plaintiffs also seek to recover statutory penalties pursuant to Labor Code section 226(a), based on Land O'Lakes, Inc.'s alleged failure to provide accurate itemized wage statements to each member of the putative class. (Complaint ¶¶ 68-75.) If Plaintiffs and the other members of the putative class prevail on their claim for failure to pay minimum wages, overtime wages, or failure to provide required meal or rest period breaks, they would be entitled to recover statutory penalties of $50.00 for the initial pay period in which a violation of Section 226(a) occurred and $100.00 per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000.00 per employee. Cal. Lab. Code § 226. This further establishes that the amount in controversy exceeds $5,000,000.

40.    The Complaint seeks an unspecified amount of attorneys' fees in connection with Plaintiffs' Complaint. (Complaint, Prayer for Relief.) These attorney fees may be included in determining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees...such fees may be included in the amount in controversy"); *see also Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). In the Ninth Circuit, the "benchmark" for acceptable attorney's fees in class action settlements is 25% of recovery. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). However, the exact percentage varies depending on the facts of the case, and in "many common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009). For purposes of this analysis only, assuming an award of attorneys' fees consisting of 25% of the total alleged damages that have allegedly accrued to date (based on the *low end* of minimum and overtime wages and meal and rest break damages) yields a total of approximately **$3,058,817.02** in attorneys' fees alone.

41.    Presuming, as it must for purposes of determining jurisdiction under CAFA, that Plaintiffs will prevail on even a subset of the claims asserted in the

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

Complaint, the data set forth above clearly establishes it is more probable than not that the amount in controversy in this action exceeds $5,000,000. ***At a minimum, the amount in controversy amounts to $12,235,268.07, which is well beyond the threshold for CAFA removal purposes.*** Therefore, the aggregate claimed damages by Plaintiffs on behalf of themselves and all members of the putative class, exclusive of statutory penalties, attorneys' fees, and interest and costs, exceeds the jurisdictional amount in controversy.

## VII.    COMPLIANCE WITH STATUTORY REQUIREMENTS

42.    Pursuant to 28 U.S.C. § 1446(a), Defendant attaches hereto a true and correct copy of the Summons and Complaint, Civil Case Coversheet, and the Tulare Superior Court Alternative Dispute Resolution Package as **Exhibit A**. A true and correct copy of Defendant's Acknowledgment of Receipt is attached hereto as **Exhibit B**. A true and correct copy of Defendant's Answer to Plaintiffs' Complaint is attached hereto as **Exhibit C**. These are the only process, pleadings, or orders in the State Court's file that have been served on Defendant up to the date of filing this Notice of Removal.

43.    In accordance with 28 U.S.C. § 1446(b), this Notice is timely filed with this Court. Pursuant to 28 U.S.C. § 1446(b), "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise." 28 U.S.C. § 1446(b). Defendant was served with Plaintiffs' Complaint on or about August 27, 2025. Defendant timely served Plaintiff with Acknowledgment of Receipt on September 15, 2025. Accordingly, this Notice is timely.

44.    As required by 28 U.S.C. § 1446(d), Defendant will provide written notice of the filing of this Notice of Removal to Plaintiffs' attorneys of record, and will promptly file a copy of this Notice of Removal with the Clerk for the Superior Court of the State of California in and for Tulare County.

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1      WHEREFORE, Defendant respectfully requests that these proceedings, entitled

2  *Cody Lenz and George Edmonds, et al. v. Land O'Lakes, Inc. et al.,* Case No.

3  VCU325133, now pending in the Superior Court of the State of California in and for

4  Tulare County, be removed to this Court.

Dated:  October 15, 2025        WINSTON & STRAWN LLP


By: */s/ Caitlin McCann*
      Joan Fife
      Caitlin McCann

*Attorneys for Defendant LAND O'LAKES, INC.;*
*and DOES 1 through 10, inclusive*

DEFENDANT LAND O'LAKES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO
FEDERAL COURT